ALBANY,
Jan. 1813.

COYLES
v.
HURTIN.

</div>

Motion denied.

———≈⊕≈———

<div align="center">

COYLES *against* HURTIN.

</div>

THIS was an action of assault and battery and false imprisonment. The defendant pleaded the general issue; but, by the consent of the attorney of the plaintiff, was to be at liberty to give any special matter in evidence, at the trial.

The cause was tried at the last *Orange circuit,* before Mr. Justice *Spencer.*

The defendant was sheriff of the county of *Orange,* and had a warrant from a justice of the peace to apprehend five persons, on a charge of having, in a riotous and tumultuous manner, assembled together, and of having committed an assault and battery on *Thomas Edsall,* &c.

A witness for the plaintiff testified, that the defendant called on the witness to assist him in apprehending certain persons, against whom he had a warrant, and who were said to have taken refuge in the house of the plaintiff, near the outlet of the *Drowned Lands,* and who were determined to resist, by force, the execution of the warrant. When the sheriff and witness arrived at the plaintiff's house, it was found that the men against whom the warrant was issued had effected their escape. Some persons, who were then present, charged the plaintiff with having assisted the men in making their escape, and after some conversation between the plaintiff and defendant, the defendant told the plaintiff he must go with him to *Goshen,* before a magistrate; and the plaintiff got his horse, and went with the defendant to *Goshen,* which is about 4 miles from the outlet, and arrived there late in the evening.

<div style="float:right; width:30%;">

The sheriff being, *ex officio,* a conservator of the peace, it is his duty to arrest all persons with their abettors, who oppose the execution of legal process. Where a sheriff, having a warrant to apprehend several persons, who had riotously assembled together, and committed an assault, &c. came to the house, where they were assembled, and being resisted and unable to make the arrest, commanded A. and others to guard the house, in which the persons were assembled, and prevent their escape, while he went to the next town, about 4 miles distant, to get

</div>

a sufficient force to enable him to execute the warrant; it was held, that A. and the others were bound to aid and assist the sheriff, on his order or summons, in preserving the peace, or apprehending the offenders; and that the sheriff was to be deemed, *constructively* present, so as to justify A. and others to arrest the offenders, during his temporary absence, for the purpose of getting further assistance, of which fact the jury were to decide; and that if A. and others, so ordered by the sheriff to assist him, during his temporary absence for such purpose, should permit or assist the offenders to escape, they would be liable to punishment.

The plaintiff having rested his cause, the defendant called the magistrate, who issued the warrant, as a witness. He proved the issuing of the warrant, &c. and stated, that on the evening of the same day, the defendant brought the plaintiff to the witness, and charged the plaintiff with having refused to aid him in apprehending the men named in the warrant, and with having assisted them in making their escape, and the witness bound over the plaintiff to answer to the charge, at the next court of general sessions of the peace.

Another witness for the defendant testified, that he was present at the plaintiff's house when the defendant came with the warrant, and read over the names of the men against whom it was issued, and asked the plaintiff if they were there, and the plaintiff said he believed some of them were there, A number of men were collected in a room above stairs, making a great noise, and threatened to sacrifice any person who should come up. The defendant requested the plaintiff to go up stairs, and persuade the men, named in the warrant, to deliver themselves up. The plaintiff said he would not go up for a thousand dollars. The defendant then requested the plaintiff to go to the foot of the stairs, and speak to the men; but the plaintiff refused to do so, and said the defendant might do his duty, for he had nothing to do with the men, and would not interfere.

It appeared that the plaintiff was superintendent of the works at the outlet of the *Drowned Lands*, and that the persons against whom the warrant was issued were labourers, employed by him, and that he had been paying and discharging them. The defendant asked the plaintiff to give him the names of the persons collected in the room up stairs; but the plaintiff made no answer. The defendant then said he was determined to take the men on the warrant, and for that purpose would return to *Goshen*, and bring with him a greater force. The defendant then commanded the plaintiff, the witness, and two others, to guard the house, during his absence, and prevent the escape of the men. The defendant placed them at different posts round the house; but the witness did not recollect that any station was assigned to the plaintiff. During the absence of the defendant, in the dusk of the evening, the witness, hearing a great noise, left his post, and found the plaintiff engaged with one of the other persons placed as a guard, in a violent quarrel. During this dispute, which drew the other guard also from his post, the men who were up stairs

made their escape from the other side of the house.   Three of
the persons left by the sheriff as a guard, but not the plaintiff,
pursued them, but without success.   When the sheriff returned,
and found that the men had escaped, the conversation, as before
stated, took place between him and the plaintiff, and he took the
plaintiff to *Goshen.*

The judge stated to the jury, that the mere refusal of the plain-
tiff, to aid the sheriff, would not justify the latter in arresting him,
without a warrant, even for the purpose of taking him before a
magistrate.   That the sheriff could not delegate to the persons
left at the plaintiff's house the power of arresting, during his
absence, the men against whom the warrant had been issued.
The plaintiff, therefore, so far from being bound to prevent the
men from escaping, would have rendered himself liable to an ac-
tion if he had attempted to stop them.   That, in his opinion, the
plaintiff was clearly entitled to recover, but he did not think it a
case for exemplary damages; that there was no ground to impute
malice to the defendant, but, on the contrary, his conduct evi-
dently proceeded from an error of judgment alone.   But the
plaintiff having sustained an injury, was entitled to compensation;
and the question of damages was exclusively for the consideration
of the jury.   The jury found a verdict for the plaintiff, for 51
dollars.

A motion was made to set aside the verdict, for the misdirec-
tion of the judge, and as against law and evidence.

*Bristed* and *J. Duer,* for the defendant.

*Fisk,* contra.

KENT, Ch. J. delivered the opinion of the court.   The ques-
tion of justification turned upon this fact, whether the plaintiff, con-
trary to his duty, aided or assisted the rioters in their resistance
to the execution of the warrant, or in their escape.   There were
several, and some of them strong circumstances, from which the
jury might have inferred that fact against him; and if so, the de-
fendant was justified in arresting him.   The sheriff is, *ex officio,*
a conservator of the peace; and it is not only his right, but his
duty to arrest all persons, with their abettors, who oppose the
execution of process.   And, as Sir *Mathew Hale* has observed,
(2 *Hale's H. P. C.* 85.) these ministers of public justice " should

have the greatest protection and encouragement in the due execu-
tion of their office." But the case is not such as to require the
verdict to be set aside, on the ground merely of being a verdict
against evidence, provided the law was laid down to the jury cor-
rectly by the court. The judge told the jury that the plaintiff
was clearly entitled to recover. ⸱ I apprehend that this expression
was much too strong for the case ; but still it was but mere opinion,
and left the jury to exercise their own judgments upon the facts.
But when the jury were told that the defendant could not autho-
rize the persons left in the house in his absence, to arrest the
rioters, and that it would have been unlawful to have opposed
their escape, I think there was a misdirection in point of law, and
one which very probably determined the verdict. The defend-
ant had come to the place to execute the process, and meeting
with a resistance ⸜in the plaintiff's house, which he had not
strength to subdue, he went back to *Goshen* for assistance, and di-
rected the plaintiff and others to aid and assist, in preventing, in the
mean time, the escape of the rioters.⸱ He must be deemed, in this
case, to have been constructively present, so as to justify an arrest
of the rioters, during his temporary absence, provided he was ab-
sent on that business, and this was a matter of⸱ fact for the jury.
The sheriff may take the power of the county, if necessary, after
resistance, to execute process. Every man is bound to be aiding
⸱and assisting, upon order or summons, in preserving the peace and
apprehending offenders, and is punishable, if he refuses. (2 *Hale's
H. P. C.* 86.) The sheriff is, *quodam modo*, present, by his autho-
rity, if he be actually engaged in efforts to arrest, *dum fervet
opus*, and has commanded and is continuing to command and pro-
cure assistance. When he is calling on the power of the county,
or a requisite portion of it, to enable him to overcome resistance,
it would be impossible that he should be actually present in every
place where power might be wanting. The law is not so unrea-
sonable as to require the officer to be an eye or ear witness of what
passes, and to render all his authority null and void, except when
he is so present. ⸱ He could not, upon that construction, use the
power of the county with effect, and it would be attended with
great inconvenience and danger to the administration of justice.⸱ ⸱
The question in these cases does not turn upon the fact of dis-
tance, so long as the sheriff is within his county, and is *bona fide*
and strictly engaged in the business of the arrest. In the execu-
tion of civil process, where there was no resistance, it was held, by

ALBANY,
Jan. 1813.

COYLES
v.
HURTIN.

Lord *Mansfield,* in *Blatch* v. *Archer,* (*Cowp.* 63.) that the officer must be the authority to arrest, but he need not be the hand, nor present, nor in sight; nor is any exact distance prescribed. It is a question of fact for a jury, whether the officer was on that business, and so, *quodam modo,* present. The necessity of the doctrine of constructive presence applies with much more force, and ought to be received with much more liberality when the officer is serving criminal process, and meets with resistance. There are many instances in the books of persons convicted of felonies committed by them, as aiders and abettors, though far beyond the power of seeing or hearing the actual perpetration of the act. The cases proceed upon the principle of mutual concert, aid and protection in the execution of one common design, and the doctrine equally applies to this case where the sheriff calls in aid to execute process. He is present, in judgment of law, by his authority, and every person who aids him, in pursuance of his summons, acts under the same protection, and the same responsibility, as if the sheriff stood in his view. This we consider to be a sound and essential principle, and if it had been stated to the jury, we cannot say that they would not have acquitted the defendant, on the ground that the plaintiff had, contrary to his duty, aided or countenanced the escape of the rioters during the absence of the sheriff.

This case ought, therefore, to be reviewed by another jury, and a new trial is accordingly awarded, with costs to abide the event of the suit.

SPENCER, J. I cannot concur in the rule for a new trial. The idea that the defendant was constructively present, after his departure from the place where the defendants in the warrant were, and whilst actually absent, at a distance of several miles; and that the persons whom he had stationed to watch those persons against whom he had process, were acting under his immediate orders, and had power to arrest those persons, appears to me quite extravagant. The offence on which the warrant was issued was a breach of the peace, and it cannot be pretended that for such an offence, then past, private individuals could arrest; nor will it be contended that the sheriff could authorize an arrest, by parol, he being absent at the time. Chief Justice *Holt* doubted whether an arrest made by a bailiff's servant would be

ALBANY,
Jan. 1813.

lawful, even in the presence of the bailiff; and it was agreed that it would not be good, if the bailiff was not, *quodam modo*, in his company. (6 *Mod.* 211. *Bull. N. P.* 63.) In *Blatch* v. *Archer,* (*Comp.* 63.) it was held, that an arrest must be by the authority of the bailiff, but that he need not be the hand that arrests, nor actually in sight; but he must be so nigh as to be near at hand, and acting in the arrest; and in that case the bailiff was within thirty rods. I believe there is no case to be found, carrying the doctrine of constructive presence further than that of *Blatch* v. *Archer.* If the officer is acting in the arrest, or if he is near at hand, then an arrest by his follower is his act. In the present case, I conceive that the defendant was not acting in the arrest, nor near at hand.

New trial granted.