EDWARD BINDERT, Plaintiff, *v.* ELMHURST TAXI CORPORATION, Defendant.

Municipal Court of New York, Borough of Queens, Fifth District, August 30, 1938.

*Oscar Katz*, for the plaintiff.

*Louis Resnick*, for the defendant.

PETTE, J. The issues herein have been duly submitted upon an agreed state of facts and present a novel question of law.

Defendant is a corporation engaged in the business of operating taxicabs for hire. On the 26th day of April, 1937, one of defendant's cabs, operated by one Whelan, was hailed by another cab driver, Cohen, who stated that his (Cohen's) cab had been stolen, and, jumping in, directed Whelan to pursue Cohen's cab, which was still in sight. It is conceded that Cohen had no intention to become a fare-paying passenger and also that Whelan did not pull down the meter-flag to register a fare.

The chase after the stolen cab continued for several blocks, and while in pursuit a collision occurred between defendant's taxicab and plaintiff's automobile. Plaintiff seeks to recover the sum of $145 for the property damage which he sustained as related.

The defendant contends that inasmuch as its chauffeur, Whelan, was not operating his taxicab within the scope of his employment at the time of the accident, it should not be held liable herein.

At this time a brief review of the basic principles of the law of master and servant would be appropriate.

A master is liable for his servant's negligence when the servant is engaged on his master's business. It is not this simple rule, but the application thereof, which creates troublesome questions. The servant may be acting for himself; then again he may be attending to an independent errand of his own (*Reilly* v. *Connable*, 214 N. Y. 586); he may be abandoning his master's service permanently, or temporarily; while still on his master's business he may also be serving a purpose of his own (*Quinn* v. *Power*, 87 N. Y. 535); again, he may be doing his master's work, but in a forbidden manner (*Cosgrove* v. *Ogden*, 49 N. Y. 255). Innumerable other conditions may arise.

No absolutely hard and fast formula can be stated which will furnish the complete answer to the problem whether at a given moment the servant is engaged upon his master's business so as to affix liability upon the master because of the servant's action or inaction. The result varies with each state of facts. Again, the differences of degree will produce unlike effects. The answer depends upon a consideration of what the servant was doing, the wherefore, when and the manner thereof. It may be entirely immaterial that the servant is where he would not be, if he obeyed his master's orders, except that it might tend to show a permanent or temporary abandonment of his master's service. (*Riley* v. *Standard Oil Co.*, 231 N. Y. 301.) There may be a re-entry upon the master's business, after a temporary abandonment. Such re-entry is not effected merely by the mental attitude of the servant. There must be also a reasonable connection of time and space with the work in which he should be engaged.

Prior to the enactment of section 282-e of the Highway Law, now known as section 59 of Vehicle and Traffic Law, the law was that an owner was not liable for the negligence of a person to whom he loaned his car, whether that person were a member of his family, a servant on a personal errand, or a stranger. (*Potts* v. *Pardee*, 220 N. Y. 431; *Van Blaricom* v. *Dodgson*, Id. 111.) This was changed by the stated law, which provides: " Negligence of operator other than owner attributable to owner. Every owner of a motor

vehicle or motor cycle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle or motor cycle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner." (Vehicle and Traffic Law, § 59.)

This is as far as the Legislature has ventured. It has not otherwise changed the rules governing the liability of the master for the acts of his servant. The Legislature may not be presumed to make any innovation upon the common law further than is required by the mischief to be remedied. (*Dean* v. *Metropolitan Elevated R. Co.*, 119 N. Y. 540, 547.)

The law has always been that a master is not liable for the acts of his servant unless within the scope of his employment. In the application of this rule it has been frequently held that an owner of an automobile is not liable to strangers invited to ride by the chauffeur, especially if contrary to orders and instructions. (*Psota* v. *Long Island R. R. Co.*, 246 N. Y. 388; *Fluegel* v. *Condert*, 244 id. 393; *Marconi* v. *Becci*, 223 App. Div. 858; affd., 251 N. Y. 567; *Rolfe* v. *Hewitt*, 227 id. 486, 491; *Goldberg* v. *Borden's Condensed Milk Co.*, Id. 465.) Section 59 of the Vehicle and Traffic Law has not changed this rule.

A chauffeur is employed to drive his employer's motor vehicle according to his employer's instructions, express or implied.

From the moment when defendant's chauffeur, Whelan, started with Cohen in pursuit of Cohen's stolen cab, the relationship of master and servant between defendant and Whelan terminated, and the resulting accident did not occur in the course of Whelan's employment. Whelan's duties to his employer were clear, *i. e.*, to receive and transport passengers for hire; it was not a part of Whelan's duties to perform police functions in apprehending criminals or recovering stolen property with the use of the defendant's cab without defendant's permission, express or implied. The factual situation presented herein does not create the inference that the accident arose at a time when an employee was acting within the scope of his employment. However praiseworthy and charitable Whelan's object may have been in aiding a fellow worker in distress, nevertheless, when Cohen commandeered defendant's taxicab, Whelan abandoned *pro tempore* the relationship of master and servant.

" The doctrine of *respondeat superior* applies *only* when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of the wrong, *at the time and in respect to the very transaction out of which the injury arose.*" (*Wyllie* v. *Palmer*, 137 N. Y. 248.)

Ordinarily it would seem that ownership of a motor vehicle at a given time would give rise to the presumption of liability. (*Ferris* v. *Sterling*, 214 N. Y. 249; *Irolla* v. *City of New York*, 155 Misc. 908.) However, under section 59 of the Vehicle and Traffic Law, liability is dependent upon legal use or operation, in business " or otherwise " with permission or consent. (*Fluegel* v. *Condert*, *supra*, at p. 394.)

The contention that Cohen might be deemed the special employer of Whelan is without merit. Whelan was not under the control or direction of Cohen in the sense that Whelan was his servant at the time of the accident in such a degree which served to impose liability for negligence. (*Higgins* v. *Western Union Telegraph Co.*, 156 N. Y. 75; *Howard* v. *Ludwig*, 171 id. 507; *Matter of Dale* v. *Saunders Bros.*, 218 id. 59.) Any other conclusion would render every passenger in a taxicab liable for the driver's acts of negligence. The driver's duty to obey cannot be viewed in such a light as to transform a servant of a general employer into a servant of a special one. (*Matter of Dale* v. *Saunders Bros.*, *supra*.)

Defendant attempts to draw an analogy by way of the case of *Matter of Babington* v. *Yellow Taxi Corp.* (250 N. Y. 14). The facts therein were concerned with the death of the defendant's taxicab driver while operating one of its cabs. A *police officer* jumped on the running board of defendant's cab and ordered the driver to chase another car in order to arrest its occupant. Suddenly, another vehicle cut across the path and from the resulting collision, defendant's cab driver was killed. In this case the Court of Appeals ruled that because Babington was in charge of the cab at the request of his employer, " the inference would follow, in the absence of evidence to the contrary, that he was in the performance of his duty at the time of the disaster (*Ferris* v. *Sterling*, 214 N. Y. 249; *Matter of Norris* v. *N. Y. C. R. R. Co.*, 246 N. Y. 307). We are to say whether that inference must be held to have been neutralized by evidence that he was chasing an escaping criminal by order of a policeman." At the time of this decision (in 1928) section 1848 of the Penal Law provided: " A person who, after having been lawfully commanded to aid an *officer* in arresting any person, or in retaking any person who has escaped from legal custody, or in executing any legal process, willfully neglects or refuses to aid such *officer* is guilty of a misdemeanor."

This duty harks back to the days of the hue and cry with the intent and purpose that " felons ought to be summarily arrested and put in gaol. All true men ought to take part in this work and are punishable if they neglect it." (Holdsworth, History of English Law, vol. 1, p. 294; vol. 3, p. 599; *Coyles* v. *Hurtin*, 10 Johns. 85; Pollack & Maitland, History of English Law, p. 577.)

For that reason the court held: " The horse has yielded to the motor car as an instrument of pursuit and flight. * * * Still as in the days of Edward I, the citizenry may be called upon to enforce the justice of the State, not faintly and with lagging steps, but honestly and bravely and with whatever implements and facilities are convenient and at hand. The incorporeal being, the Yellow Taxi Corporation, would have been bound to respond in that spirit to the *summons of the officer* if it had been sitting in the driver's seat. In sending Babington upon the highway, it knew or is chargeable with knowledge that man and car alike would have to answer to the call. An *officer* may not pause to parley about the ownership of a vehicle in the possession of another when there is need of hot pursuit."

In the *Babington* case a *police officer* commandeered the cab; in the present case, a private individual, Cohen, sought to recover his private property. The dissimilarity of facts is too great to be considered as analogous. A study of section 1848 of the Penal Law as amended confirms this conclusion. This section provides that a person who, after having been lawfully commanded to aid an *officer* in arresting a person, or in executing any legal process, willfully neglects or refuses to aid such officer, is guilty of a misdemeanor. Further provision is made, that in the event such person is injured while assisting the *officer*, the amount of his damage or injury shall be a valid cause of action against the municipality by which said *officer* is employed.

It is important to note that when a peace officer commandeers a car, or requests assistance, the failure to comply is punishable under the provisions of the Penal Law. On the other hand, while a private person *may*, under section 183 of the Code of Criminal Procedure, arrest another for the commission, or attempted commission, of a crime, his failure to act is not punishable in a similar manner. The provisions of section 183, *supra*, are permissive only, *and not mandatory*.

Because defendant's chauffeur, Whelan, at the time of the accident, was using defendant's cab for a purpose beyond the scope of his employment, the court has arrived at the unavoidable conclusion that the plaintiff fails to state a cause of action.

Complaint dismissed upon the merits.