In the Matter of the Claim of CHARLOTTE B. BABINGTON et al., Respondents, against YELLOW TAXI CORPORATION, Appellant.

STATE INDUSTRIAL BOARD, Respondent.

(Argued November 20, 1928; decided December 31, 1928.)

*Clarence B. Tippett* for appellant. The death of the deceased did not arise out of and in the course of his employment, but was occasioned by the commandeering of the deceased and of the vehicle by a police officer. (*Heitz* v. *Ruppert*, 218 N. Y. 148; *Saenger* v. *Locke*, 220 N. Y. 556; *Markowitz* v. *American Wet Wash Laundry*, 219 App. Div. 756; *Coyles* v. *Hurtin*, 10 Johns. 85; *Dale* v. *Saunders*, 171 App. Div. 528; 218 N. Y. 59; *Nolan* v. *Cranford Co.*, 171 App. Div. 959; 219 N. Y. 581; *De Noyer* v. *Cavanaugh*, 175 App. Div. 284; *Di Salvio* v. *Menihan*, 225 N. Y. 123; *Gifford* v. *Patterson*, 222 N. Y. 4; *Culhane* v. *Economical Garage Co.*, 188 App. Div. 1; *Minerly* v. *Kingsbury Const. Co.*, 191 App. Div. 618; *Urban* v. *Topping*, 184 App. Div. 633; *De Voe* v. *N. Y. State Railways*, 218 N. Y. 320; *Scholtzhauer* v. *C. & L. Lunch Co.*, 233 N. Y. 12; *McCarter* v. *La Rock*, 240 N. Y. 282.)

*Albert Ottinger, Attorney-General* (*E. C. Aiken* of counsel), for State Industrial Board, respondent. It cannot properly be claimed that the city of Brooklyn through its police department was the employer in this case but, if so, it was merely a special employer for the time being and the general employer was still liable for accidental injuries occurring to its employees. (*Dale* v. *Sanders Bros.*, 218 N. Y. 59; *De Noyer* v. *Cavanaugh*, 221 N. Y. 273.)

CARDOZO, Ch. J. Babington, employed as a chauffeur by the Yellow Taxi Corporation, met his death through accident while driving one of its cabs. All that we know of the circumstances comes from the employer's report of the injury, which has been embodied in the findings. A police officer jumped on the running board and ordered

the driver to chase another car in order to arrest its occupant. Suddenly another vehicle cut across the path. The result was a collision from which death ensued. From the fact that Babington was in charge of the car at the request of the employer, the inference would follow, in the absence of evidence to the contrary, that he was in the performance of his duty at the time of the disaster (*Ferris* v. *Sterling*, 214 N. Y. 249; *Matter of Norris* v. *N. Y. C. R. R. Co.*, 246 N. Y. 307). We are to say whether that inference must be held to have been neutralized by evidence that he was chasing an escaping criminal by order of a policeman.

"A person who after having been lawfully commanded to aid an officer in arresting any person, or in retaking any person who has escaped from legal custody, or in executing any legal process, wilfully neglects or refuses to aid such officer is guilty of a misdemeanor" (Penal Law, § 1848). The duty goes back to the days of the hue and cry. "The main rule we think to be this," say the historians of our early law (Pollock & Maitland, History of English Law, vol. 2, p. 580) "that felons ought to be summarily arrested and put in gaol. All true men ought to take part in this work and are punishable if they neglect it" (cf. Holdsworth, History of English Law, vol. 1, p. 294; vol. 3, p. 599; vol. 4, p. 521; *Coyles* v. *Hurtin*, 10 Johns. 85). The law did not limit itself to imposing upon the manhood of the country a duty to pursue. To make pursuit effective there were statutes in those early days whereby a man was subject to a duty to provide himself with instruments sufficient for the task. A typical illustration is the Statute of Winchester, 13 Edw. I, enacted in 1285. "Immediately upon such Robberies and Felonies committed, fresh Suit shall be made from Town to Town, and from Country to Country." Every man shall "have in his house Harness for to keep the Peace after the antient Assise." The amount is to be proportioned to the quantity of

lands and goods. Thus, for fifteen pounds of lands and goods there shall be kept " an Hauberke, a Breastplate of Iron, a Sword, a Knife, and an Horse." We may be sure that the man who failed to use his horse, and who would only go afoot, would have had to answer to the King (Pollock & Maitland, History of English Law, vol. 2, p. 577; Holdsworth, History of English Law, vol. 1, p. 294).

The horse has yielded to the motor car as an instrument of pursuit and flight. The ancient ordinance abides as an interpreter of present duty. Still as in the days of Edward I, the citizenry may be called upon to enforce the justice of the State, not faintly and with lagging steps, but honestly and bravely and with whatever implements and facilities are convenient and at hand. The incorporeal being, the Yellow Taxi Corporation, would have been bound to respond in that spirit to the summons of the officer if it had been sitting in the driver's seat. In sending Babington upon the highway, it knew or is chargeable with knowledge that man and car alike would have to answer to the call. An officer may not pause to parley about the ownership of a vehicle in the possession of another when there is need of hot pursuit. In so far as the danger of pursuit was a danger incidental to the management of the car, it was one of the risks of the employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute. (*Matter of Waters* v. *Taylor Co.*, 218 N. Y. 248.)

We have preferred to place the ruling upon the broadest ground available. Others, though narrower, sustain it. Babington was in charge of the cab, and could not desert it without peril to his master's interests. The fact that while protecting it for his master, he used it incidentally to preserve the public peace, was not such a departure from the course of duty as to constitute an abandonment of the employment, even if it be assumed that the direction of the officer was not a binding order (*Riley* v.

*Standard Oil Co.*, 231 N. Y. 301; cf. Young B. Smith, Frolic and Detour, 23 Col. L. Rev. 444, and cases there cited). There is no evidence that the route was any different from the one that would otherwise have been followed, and none that the speed was so changed as to aggravate the danger. Causal connection there was none so far as the record has informed us, between the collision with the trolley car and the presence of the officer on the running board in pursuit of an offender.

The question is not here whether the employer would be liable to third persons injured in the chase, and, if so, to what extent. Negligence would certainly be relative to the need and the occasion; a speed too great at other times is proper in emergencies. Conceivably the employee would be deemed to have passed out of the service of his general employer and into the service of a special one. We leave that question open, not meaning to express, even by intimation, an opinion as to the answer. The general employer is still liable under the provisions of the statute (*Matter of De Noyer* v. *Cavanaugh*, 221 N. Y. 273).

The order should be affirmed with costs.

O'BRIEN, J. (concurring in result). The hazard which Babington encountered was only such as is incidental to an employment to drive a public vehicle for hire. The Yellow Taxi Corporation operates its cabs with the presumptive knowledge that its employees, like all other persons when directed, are bound to aid in the apprehension of criminals. (Penal Law, sec. 1848.) This employee could not aid except by the use of his cab. A police officer, no less than a private citizen, is entitled to ride in this public conveyance. We may pass over many arguments raised by appellant. They do not seem to be decisive. No doubt the owner can recover the customary rate of fare for the use of the car. Whether recovery can be had for injury to the car while under the

directions of the police officer need not be determined in this proceeding. No occasion now arises to consider the owner's liability or its absence for any negligence toward third parties with which the chauffeur might·be charged. The circumstance that he might drive more rapidly than the usual and legal rate of speed and while so driving might injure another would be considered in estimating the value of all the facts and in determining whether any negligence was present. The essential point is that the chauffeur continued to do the work of his general employer which was driving a taxicab for hire. A driver is always subject to such reasonable instructions in respect to speed and direction as his passenger may issue. The fact that the passenger may be a police officer engaged at the time in official duty does not affect the driver's status except in regard to the higher degree of obedience which he is bound to observe. The driver's duty to obey is the same as any person must yield and cannot be viewed in such a light as to transform a servant of a general employer into a servant of a special one. (*Matter of Dale* v. *Saunders Bros.*, 218 N. Y. 591.) Even if on the facts before us we were to conclude that the public became Babington's special employer, the power to make an award against the general employer remains vested in the State Industrial Commission and the award was made against it. In a case where a general and a special employment exists, either or both employers may be made liable for compensation. (*Matter of De Noyer* v. *Cavanaugh*, 221 N. Y. 273.) Where, however, the special employer is the sovereign and the special duties are those affected by a governmental and police character, no award can be made against the public unless such duties are among those enumerated in the statute as hazardous employments. Appellant's argument by which it reasons that Babington was just as much an employee of the city of New York as was the police officer leads to the conclusion that his special duty, if such it may be deemed,

was chasing thieves. That duty does not constitute an employment, hazardous or otherwise, within the Compensation Law of this State. It is a public function outside the operation of the statute. (*Matter of Ryan* v. *City of New York*, 228 N. Y. 16.)

The order should be affirmed.

KELLOGG, J. (dissenting). The Industrial Board found that, while the employee was driving his employer's car, " a police officer of the city of New York jumped on the running board of said taxi, and ordered the deceased to chase another car, and a touring car suddenly cut him off and the car of deceased swerved into a trolley car," with the result that the employee sustained injuries from which he died. The finding was evidently based on two reports of the employer. In one of these the employer stated: " Police officer commandeered cab." In the other: " Police officer jumped on running board and ordered driver to chase another car." In view of the word " ordered," used by the Board in its finding, and the words contained in the reports upon which that finding was based, it is idle to say that the police officer contracted with the cab driver for a ride in his cab. He did nothing of the sort. He " ordered," that is to say, he commanded the driver to chase another car. The order was given, and obedience thereto was yielded, because of the provisions of section 1848 of the Penal Law. They are as follows: "A person, who, after having been lawfully commanded to aid an officer in arresting any person, or in retaking any person who has escaped from legal' custody, or in executing any legal process, wilfully neglects or refuses to aid such officer is guilty of a misdemeanor." Unquestionably when the employee, in obedience to a lawful command, gave aid to the police, he became himself a member of the police department. (*Monterey County* v. *Rader*, 199 Cal. 221; *Village of West Salem* v. *Industrial Comm.*, 162 Wis. 57.) The direction which he took; the speed at which he drove his

cab — these became subject to the supervision and control of the policeman on the running board. Since, from then on, in all his movements, he must have yielded obedience, not to his original employer, but to the officer, he ceased to be a servant of the former and became a servant of the police department of the government. The argument that he remained the general employee of his original employer and a special employee of the police department is not tenable. All the cases dealing with general and special employment proceed upon the theory that the work of the special employment is performed at the instance of the general employer. Here the original employer was not aware that his employee had been impressed into the police service and, therefore, could not have given its consent or its direction that the services should be performed.

I favor a reversal.

POUND, CRANE, ANDREWS and LEHMAN, JJ., concur with CARDOZO, Ch. J.; O'BRIEN, J., concurs in result in separate opinion; KELLOGG, J., dissents in opinion.

Order affirmed.