**PHELPS v. BOONE et al.**

No. 5807.

Court of Appeals of the District of Columbia.

Argued Oct. 4, 1933.

Decided Oct. 30, 1933.

VAN ORSDEL, Associate Judge, dissenting.

Edwin C. Dutton, of Washington, D. C., for plaintiff in error.

Leo A. Rover, John J. Wilson, and Ralph E. Day, all of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Defendant in error (Dr. Boone) is a captain in the Medical Corps of the United States Navy. At the time of the events out of which this suit grew, he was assigned as physician to the White House. In connection with this duty, the Navy Department had provided for his use a Packard automobile with a chauffeur "so that he could be in touch with the White House at all times." The chauffeur was an enlisted man in the Navy.

On the evening of April 19, 1932, as his own evidence discloses, Dr. Boone "called the garage and had this Packard car, driven by Prettyman [the enlisted man], sent to him at the White House; from there he went to his home for Mrs. Boone, from there to the home of General Patterson, and from there Prettyman drove them [Dr. and Mrs. Boone and General and Mrs. Patterson] to the home of a physician in Baltimore where they all had dinner, and after dinner went to the opera in his friend's car, Prettyman following with the Packard and waited outside, and after the opera, they started for Washington in the Packard driven by Prettyman." On the return trip, somewhere around midnight, the driver of the car negligently struck and injured the car belonging to plaintiff in error. At the time of the collision, defendant in error was sitting on the front seat with the driver. The negligence of the driver is not in dispute. The sole question is whether, in the circumstances, the doctrine of respondeat superior is applicable.

Defendant in error insists that because he was subject to call whenever he might be needed at the White House and since the automobile was assigned to him for the purpose of enabling him to respond, its use by him on the evening in question was in his official capacity, since whether in Baltimore or elsewhere he remained subject to call. He likewise insisted that because the car itself belonged to the United States, and the driver, an enlisted man, was assigned to that duty and answerable to the Navy Department rather than to defendant in error, there was lacking that control and direction, so far as

defendant in error is concerned, to make the doctrine apply.

We think the case turns upon the question whether at the time of the accident the car was being used by defendant in error in the discharge of an official function or was being used for a purely private purpose, and the evidence of defendant in error on this subject leaves no doubt, we think, that the latter rather than the former is true. From this testimony it appears that Dr. Boone, together with his wife and his guests, General and Mrs. Patterson, left Washington in the late afternoon to keep a dinner engagement with a friend in Baltimore and afterwards to go to the opera. The statement of this purpose is itself enough to indicate very clearly the purely private nature of the trip to Baltimore. It does not matter, we think, that because there might have been a summons to Dr. Boone to return to the White House, and because in that case the car would have facilitated the return, the quality of the use is thereby changed. There was no summons and, from the inception of the visit to Baltimore to its conclusion, nothing happened to give the use of the car an official aspect, and it is not contended, nor can it be, that the assignment of the car to Dr. Boone could have been made for any other use than official business. How broad this term is or what it may include we need not now stop to inquire. Certainly, we think, it cannot be extended to include a visit outside the District of Columbia in no way connected with any activity which the assignment to duty at the White House imposed, and in this view it would seem to us inevitably to follow that its use for another purpose created thereby the relation of master and servant between defendant in error and the driver of the car. The latter became pro hac vice the servant of the former and this because for the time being, that is, when the act complained of happened, the driver was under the control of defendant in error and doing the things he was then directed by him to do.

The usual test in such circumstances, that is to say, the determination of liability for a negligent act on the part of a servant, is the right or the power on the part of the person charged, to command and control the servant in the performance of the causal act at the moment of performance. Under the conditions the employer or master is the person who at the moment has the power of control. See Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480; Harrell v. Cement Co. (C. C. A.) 250 F. 83, 86;

Standard Oil Co. v. Parkinson (C. C. A.) 152 F. 681, and cases cited there. It cannot be doubted, we think, that when defendant in error ordered the driver of the car to meet him at the White House and drive him thence to his own home and thence with his wife and guests to Baltimore, he intended to and did exercise the power of control, and it is beside the case, as we view it, to consider whether orders so given were lawful or otherwise. Defendant in error assumed the right to use and control the car and driver for a private purpose. He thereby assumed responsibility for the consequences of such use and control, and one such responsibility was to respond personally for an injury occurring to a third person resulting through the negligence of the driver.

Reversed and remanded for a new trial not inconsistent with this opinion.

Reversed and remanded.

VAN ORSDEL, Associate Judge, dissents.