In re an ORIGINAL INVESTIGATION, SPECIAL GRAND JURY OF MARION COUNTY, Indiana.

INDIANA BELL TELEPHONE COMPANY, INCORPORATED, Appellant-Respondent,

v.

STATE of Indiana, Appellee-Petitioner.

No. 1079S297.

Supreme Court of Indiana.

April 7, 1980.

Bruce N. Cracraft and Richard L. Besore and Harold L. Folley, Indianapolis, for appellant.

Stephen Goldsmith, Pros. Atty., Theodore L. Sendak, Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

On October 4, 1979, pursuant to an investigation by the Indianapolis Police Department, the Marion County Prosecutor filed a petition in Marion Superior Court, Criminal Division IV, requesting the installation of a pen register device and the assistance of appellant, Indiana Bell Telephone Company, Inc. (hereinafter referred to as Indiana Bell) in the installation of the pen register. On October 11, 1979, the Court entered a final order which authorized the Marion County Prosecutor's Office, through its designated agent, to install a pen register at the offices of Indiana Bell to record the telephone numbers of outgoing calls placed from certain specified telephones for a designated period of 30 days. The trial court overruled Indiana Bell's Motion to Correct Errors and denied its Request for a Stay on October 15, 1979. The Indiana Court of Appeals granted a stay of the Order upon motion of Indiana Bell in Cause No. 2–1079–A–321. Under Appellate Rule 4(A)(10) this Court granted transfer which was requested on October 29, 1979, by way of a joint petition of Indiana Bell and the State of Indiana.

The trial court issued the order in question upon a finding that there was probable cause to believe that evidence of violations of the Indiana Code, specifically felonies, would be obtained through the use of a pen register which would be attached to particular telephones. The evidence in this case discloses that a pen register is a mechanical device attached to a given telephone line and usually installed at a central telephone facility. It records on paper tape all numbers dialed from that line. It does not identify the telephone numbers from which incoming calls originated, nor does it reveal whether any call, either incoming or outgoing was completed. A pen register does not acquire the contents of the communication. It only prints the time and date of the transmission, the number dialed and the duration of time that the circuit remained open.

Appellant asserts the Marion Superior Court lacks the authority to authorize the use of a pen register to acquire evidence of the commission of a crime or the continuing commission of specific crimes. Appellee, on the other hand, argues that the installation and use of a pen register does not constitute a "search" within the meaning of the Fourth Amendment to the United States Constitution; that therefore no search warrant is required; and that Indiana Courts of general jurisdiction have the inherent authority to order the installation and use of these surveillance devices. Although the United States Supreme Court has recently held that the installation and use of a pen register is not a "search" and that no search warrant is required, *Smith v. Maryland* (1979) 442 U.S. 735, 745–46, 99 S.Ct. 2577, 2582–2583, 61 L.Ed.2d 220 at 230, it is unnecessary for us to address that question in this case since the Order herein was based on probable cause, supported by an affidavit, and therefore constituted a valid search warrant. It is necessary, however, to examine the source of the authority of Indiana courts with general jurisdiction to issue such a search warrant.

In *United States v. New York Telephone Co.* (1977) 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376, the Supreme Court found that a District Court had the power to authorize the installation of pen registers. The Court relied upon Fed.Rule Crim.Proc. 41(b) which authorizes the issuance of a warrant to:

search for and seize any (1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise crimi-

nally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense. 434 U.S. at 169, 98 S.Ct. at 370, 54 L.Ed.2d at 387.

The Court specifically held that this rule was "broad enough to encompass a 'search' designed to ascertain the use which is being made of a telephone suspected of being employed as a means of facilitating a criminal venture and the 'seizure' of evidence which the 'search' of the telephone produces." *United States v. New York Telephone Co., supra,* 434 U.S. at 169, 98 S.Ct. at 370, 54 L.Ed.2d at 387.

The "search" in *New York Telephone* involved the installation of a pen register where there was probable cause to believe that certain telephones were being used to facilitate an illegal gambling operation in violation of 18 U.S.C. § 1952 (use of any facility in interstate or foreign commerce in aid of racketeering enterprise) and 18 U.S.C. § 371 (conspiracy to commit an offense). It follows that the telephone could be a means of facilitating a criminal venture such as a conspiracy to possess and sell stolen merchandise or to possess and distribute drugs in violation of Indiana law.

The Sixth Circuit in 1977 concluded that the impulses recorded by telephone "trapping devices" which trace the numbers of incoming calls and are similar to pen registers, fall within the scope of Rule 41. *Michigan Bell Tel. Co. v. United States* (1977) 565 F.2d 385 at 389. Other courts have found Rule 41 is by analogy supportive of the conclusion that Federal courts do have the authority to issue pen register orders. See *Application of the U. S. In Matter of Order Etc.* (2d Cir. 1976) 538 F.2d 956, *rev'd on other grounds* 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376; *United States v. Southwestern Bell Tel. Co.* (8th Cir. 1976) 546 F.2d 243 (court has inherent authority to order assistance of public utility).

Indiana's counterpart to Fed.R.Crim.Proc. 41, IC § 35–1–6–1 [Burns 1978], is very similar to the Federal Rule. IC § 35–1–6–1 provides:

(a) A court may issue warrants upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, to search any place for any of the following:

\* \* \* \* \* \*

(3) Property used or possessed with intent to be used as the means of committing an offense or concealed to prevent an offense from being discovered.

(4) Property constituting evidence of an offense or tending to show that a particular person committed an offense.

We believe that the Indiana search warrant statute is broad enough to encompass a court order, predicated upon a finding of probable cause, to install and use a pen register device to obtain evidence of crimes which are being committed.

Our decision is in accord with *United States v. New York Telephone Co., supra,* which held that Rule 41 "is not limited to tangible items but is sufficiently flexible to include within its scope electronic intrusions authorized upon a finding of probable cause." 434 U.S. at 169, 98 S.Ct. at 371, 54 L.Ed.2d at 388. The Supreme Court interpreted Rule 41 this broadly even though the rule itself defined the term "property" as "to include documents, books, papers and any other tangible objects." Fed.R.Crim. Proc. 41(h). The Court stated that Rule 41(h) "does not restrict or purport to exhaustively enumerate all the items which may be seized pursuant to Rule 41." 434 U.S. at 169, 98 S.Ct. at 370, 54 L.Ed.2d at 387. Appellants herein argue that the Indiana Legislature's deletion of the definition of property from IC 35–1–6–1 indicates a legislative intent to narrow the meaning of "property" for which a search warrant may issue. We disagree. The Legislature's excision of the definition of the term "property" from the search warrant statute can be seen neither as an attempt to broaden nor to narrow the meaning of the term. The term "property" in IC 35–1–6–1 includes the type of information which could be discovered by a pen register search.

Therefore, we hold that IC 35–1–6–1 authorizes a court to issue a search warrant to discover and seize the information which would be revealed by a pen register search where there is probable cause to believe that crimes are being committed and that the telephone is being used in furtherance of a criminal venture. The search warrant must, of course, specifically state the phone or phones which will be "searched" and, as in the instant case, be limited to a reasonable duration.

Appellant briefly alludes to broad notions of freedom of speech and association which, it claims, would be impermissibly infringed by pen register surveillance. To discover that a call was placed from one phone to another where the means of discovery are sanctioned by a search warrant supported by probable cause and under court supervision is a far cry from learning and monitoring the contents of telephone conversations without court supervision. Since the pen register does not reveal the contents of a telephone conversation, it is difficult for us to see how the use of such a device would have a chilling effect upon free speech. Furthermore, "speech thought to promote a criminal scheme . . . is hardly within the ambit of the First Amendment." *United States v. Choate* (9th Cir. 1978) 576 F.2d 165, 181.

Appellant next argues that the Constitutional right to associate freely, which is protected by the First Amendment to the United States Constitution and Art. 1, § 31 of the Indiana Constitution, is impermissibly affected by court ordered pen register surveillance. The freedom of association "for the purpose of advancing ideas and airing grievances is protected by the Due Process Clause of the Fourteenth Amendment from invasion by the States." *Bates v. Little Rock* (1960) 361 U.S. 516, 523, 80 S.Ct. 412, 416, 4 L.Ed.2d 480, 485. There is, however, no protection of associations made in furtherance of a criminal conspiracy. "[T]he practice of associating with compatriots in crime is not a protected associational right." *United States v. Choate, supra,* 576 F.2d at 181. According-

ly, we find that court-ordered pen register surveillance of telephones which are reasonably suspected of being used to further a criminal scheme does not violate a person's constitutionally protected rights of free speech and free association.

Appellant finally asserts that a court of general jurisdiction does not have the power to order a public utility to render technical assistance and property to assist the state in a criminal investigation. In *United States v. New York Tel. Co.* (1977) 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376, the Supreme Court stated:

Turning to the facts of this case, we do not think that the Company was a third party so far removed from the underlying controversy that its assistance could not be permissibly compelled. A United States District Court found that there was probable cause to believe that the Company's facilities were being employed to facilitate a criminal enterprise on a continuing basis. For the Company, with this knowledge, to refuse to supply the meager assistance required by the FBI in its efforts to put an end to this venture threatened obstruction of an investigation which would determine whether the Company's facilities were being lawfully used. 434 U.S. at 174, 98 S.Ct. at 373, 54 L.Ed.2d at 391.

The Court found that it was within the power of the District Court to order the company to provide a leased line and assistance in the installation and operation of the pen register. The situation in our case is similar. Since we have found that the Court has the power under IC 35–1–6–1 to order pen register surveillance, it follows that the Court must be able to compel the assistance of the telephone company or its powers would be nullified. *United States v. Southwestern Bell Tel. Co.* (8th Cir. 1976) 546 F.2d 243, 246.

The power to order the assistance of the telephone company in pen register surveillance where the order is based upon probable cause, has been held to be within the inherent authority of the court. *United States v. Southwestern Bell Tel. Co., supra.*

"The authority to compel cooperation of the telephone company is in a sense concomitant of the power to authorize the installation of a pen register, for without the former the latter would be worthless." *United States v. Illinois Bell* (1976), 531 F.2d 809 at 814. See also *New England Tel. & Tel. v. District Atty.* (1978) 374 Mass. 569, 373 N.E.2d 960.

The idea that a citizen may be expected to become directly involved in the law enforcement process is not new. "Still, as in the days of Edward I," wrote Justice Cardozo, "the citizenry may be called upon to enforce the justice of the state, not faintly and with lagging steps, but honestly and bravely and with whatever implements and facilities are convenient and at hand." *Babington v. Yellow Taxi Corp.* (1928) 250 N.Y. 14, 17, 164 N.E. 726, 727. Furthermore, Indiana Bell is a highly regulated public utility with a duty to serve the public and not simply an ordinary citizen.

The reasoning behind the proposition that a court of general jurisdiction has the authority to enlist the aid of the telephone company to carry out a pen register surveillance was well stated in *Michigan Bell v. United States* (1977) 565 F.2d 385 where the Sixth Circuit postulated:

> It is to be emphasized that a telephone company is no ordinary third party. It is a public utility, enjoying a monopoly in an essential area of communications. It owns and controls the telephone facilities involved in the present case. The district court found that there was probable cause to believe that these facilities were being used for criminal purposes. The telephone company is the only entity that can effectuate the orders of the district court to prevent company-owned facilities from being used in violation of both state and federal laws. . . .
> At common law a sheriff could require an unwilling citizen to assist him in executing king's writs, effecting an arrest, quelling riots and apprehending robbers. A posse comitatus could be assembled in emergency situations. . . . It is obvious that the power of the district court

in the present case—directed against a public utility to prevent the unlawful use of its own facilities at no hazard or cost to the utility—is far less burdensome than the exercise of the foregoing powers of the sheriff at common law. 565 F.2d 385 at 389.

We hold that the Marion Superior Court has the inherent authority, upon a showing of probable cause, to require Indiana Bell to provide the Marion County Prosecutor with the facilities and technical assistance necessary to carry on a court-supervised pen register surveillance. It is important to note that Indiana Bell has the capability to install pen registers or other devices which perform the same functions; that it utilizes pen registers on a regular basis for its own purposes; and that it provides technical assistance for authorized Federal wiretaps. (Tr. p. 70)

The Order by the Marion Superior Court did not provide for compensation to Indiana Bell for the services it was ordered to provide and Appellant urges that this omission raises constitutional difficulties. We agree with the other courts which have held that the State must reimburse the Company for reasonable expenses. *United States v. New York Telephone Co.* (1977) 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376; *Michigan Bell v. United States*, (1977) 565 F.2d 385; *New England Tel. and Tel. v. District Atty.* (1978) 374 Mass. 569, 373 N.E.2d 960.

For the foregoing reasons, we hold that the Marion Superior Court, Criminal Division IV, a court of general jurisdiction, has the authority under IC 35–1–6–1 to order the installation and use of a pen register device to obtain evidence of the existence of the commission of crimes where there is probable cause to believe such crimes are being committed and that the telephone is being used in furtherance of a criminal venture. We further find that the Court has the inherent power to compel the assistance of Indiana Bell, in the installation and use of a pen register device. The State shall reimburse the Company for the reasonable value of its services.

This Court therefore affirms the Marion Superior Court's denial of Appellant's Motion to Vacate and to Correct Errors.

This cause is remanded to the trial court for an addition to its Order providing for reimbursement of Indiana Bell for reasonable expenses incurred in rendering its services in carrying out the Order of the court.

The trial court is in all other respects affirmed.

DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., dissents with opinion in which PRENTICE, J., concurs.

PRENTICE, J., dissents with opinion in which HUNTER, J., concurs.

HUNTER, Justice, dissenting.

I join my brother Justice Prentice's dissent in this case. What is constitutionally permissible is not at issue here. *Smith v. Maryland,* (1979) 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220. We should not interpret Indiana's search warrant statute, Ind.Code § 35–1–6–1 *et seq.* (Burns 1979 Repl.), as broad enough to encompass any constitutionally permissible device with which a prosecutor hopes to obtain evidence of criminal activity.

The majority relies on *United States v. New York Telephone Co.,* (1977) 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376, as authority for its broad interpretation of Indiana's statute. In that case, the Supreme Court held that Fed.R.Crim.P. 41 was broad enough to empower a federal court to issue an order similar to the Superior Court's order in the case at bar. I do not view the decision in *United States v. New York Telephone Co.* as a mandate for state courts to fall in line with broad interpretations of their own search warrant rules or statutes.

Even if I were to agree that our statute admits of the majority's interpretation, I would be compelled to echo the sentiments of Justice Stevens in decrying the judicial activism represented by the majority opinion:

"To reach its result in this case, the Court has had to overlook the Rule's specific language, its specific safeguards, and its legislative background. This is an extraordinary judicial effort in such a sensitive area, and I can only regard it as most unwise. It may be that a pen register is less intrusive than other forms of electronic surveillance. . . . But the Court should not try to leap from that assumption to the conclusion that the District Court's order here is covered by Rule 41." *United States v. New York Telephone Co., supra,* 434 U.S. at 185–6, 98 S.Ct. at 379, 54 L.Ed.2d at 398 [Justice Stevens, dissenting].

As Justice Prentice points out, from the plain language of our search warrant statute it is evident that the legislature did not intend to authorize the sort of order issued by the Marion Superior Court here. Under *Smith v. Maryland, supra,* authorization of this type would be permissible. However, the General Assembly has not so provided. I find Justice Stevens' characterization of the majority opinion in *United States v. New York Telephone Co., supra,* is most apt here:

"The Court's decision may be motivated by a belief that Congress would, if the question were presented to it, authorize both the pen register order and the order directed to the Telephone Company. But the history and consistent interpretation of the federal court's power to issue search warrants conclusively show that, in these areas, the Court's rush to achieve a logical result must await congressional deliberation. From the beginning of our Nation's history, we have sought to prevent the accretion of arbitrary police powers in the federal courts; that accretion is no less dangerous and unprecedented because the first step appears to be only minimally intrusive." 434 U.S. at 179, 98 S.Ct. at 376, 54 L.Ed.2d at 394 [footnote omitted].

We should be no less concerned with the accretion of police powers in Indiana courts.

Additionally, the probable cause affidavit in the case at bar does not comport with statutory requirements. The majority's opinion legislates out the requirement that

a probable cause affidavit allege "that the affiant believes and has good cause to believe that such things as are to be searched for *are* there concealed . . . ." Ind. Code § 35–1–6–2 (Burns 1979 Repl.) [emphasis added]. I cannot imagine how one could allege, under oath, that phone numbers to be called in the future are concealed anywhere. The probable cause affidavit in this case contains no such allegation and, therefore, the order in this case is improper.

I, too, would reverse the judgment of the trial court and vacate the order authorizing the attachment of the pen register and directing appellant to assist the state in this regard.

PRENTICE, J., concurs.

PRENTICE, Justice, dissenting.

The majority opinion impresses me as an "end justifies the means" approach, an approach that invariably creates more problems than it solves. Unquestionably the Marion County Prosecutor is in need of assistance that the Telephone Company has the capability to provide. In my view, the Company should, as a public spirited citizen, render such assistance, if it can do so without violating the protected rights of others, thereby exposing itself to liability. I see no risk to the Company in this regard, and such opinion is shared by six of the Justices of the Supreme Court of the United States, which recently held that the installation and use of the pen register did not constitute a "search" requiring a warrant under the Fourth and Fourteenth Amendments. (Stewart, Marshall and Powell dissenting.) *Smith v. Maryland,* (1979) 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 at 230. In that case, the party offended by the procedure challenged the admissibility of the resulting evidence in his criminal trial. The Telephone Company had assisted the police, at their request, without the benefit of a warrant. The Court held that there was *no legitimate expectation of privacy* in the phone numbers that Smith had dialed. (Emphasis added.) I see no basis for any other conclusion under the Constitution of Indiana.

The majority premises its decision upon the existence of a valid search warrant and an inherent power in the Court to compel assistance. I disagree with both postulates.

The majority opinion sets forth only a portion of our search warrant statute and determines that the statute is broad enough to encompass evidence of the type produced by pen registers. Considering the obvious legislative purposes of the enactment, I have no difficulty in accepting this conclusion. However, another section of the statute, Ind.Code 35–1–6–2 makes it clear that only property (or evidence) in existence at the time of the filing of the probable cause affidavit may be searched for.

" * * * No warrant * * * shall be issued until there is filed * * * an affidavit * * * alleging * * * that the affiant believes * * * that such things as are to be searched for *are there concealed* * * *." (Emphasis added.)

A subsequent provision of the statute provides for a showing of the same facts by sworn testimony. It is agreed in this case that there is not presently any information in the possession of the Telephone Company upon which a warrant could operate. There is only an expectancy that helpful information will come into existence and be captured if it does. As I do not see the surveillance sought as a search, however, I perceive no constitutional impediment to legislative enactment requiring the type of monitoring and disclosure sought by the Prosecutor, as a proper exercise of the police power.

"The police power which belongs to the states is generally vested in and exercised by the legislative branch of the state government in accordance with immemorial governmental usage. The power of the legislature is extremely broad, and is subject only to the requirements of reasonableness and appropriateness of the means and to the limitations of the Federal and state constitutions." 16A Am. Jur.2d, Courts, § 79.

The majority has determined that the Marion County Superior Court, under its inherent powers, could properly order the Telephone Company to carry out the desired surveillance. I find no case purporting to hold that courts have any inherent powers, other than such as are incidental and reasonably necessary to the accomplishment of their mission.

"The inherent powers of a court do not increase its jurisdiction; they are limited to such powers as are essential to the existence of the court and necessary to the orderly and efficient exercise of its jurisdiction."

20 Am.Jur.2d, Courts, § 78.

"Courts have inherent power to do all things that are reasonably necessary for the administration of justice within the scope of their jurisdiction. It has been said that courts have inherent power to summon witnesses and compel their appearance in court, to administer oaths, to issue or to honor letters rogatory, to prevent abuse of process, to provide counsel for the indigent, to have errors in the records corrected, to relieve a party in default, to discipline attorneys at law, to take appropriate action in cases of contempt, and to do various other things to maintain order and to function properly as a court."

20 Am.Jur.2d, Courts, § 79.

Criminal investigations are not within the mission of our courts, except to the extent that the Legislature has provided. Control over the issuance of search warrants has been provided for by statute. But no provision has been made for the issuance of general writs in aid of the Prosecutor's power and duty to investigate crime. The jurisdiction of the Marion Superior Court is fixed by statute, and in general, is coextensive with the Circuit Courts. Ind.Code § 33–5–35.1–4. Jurisdiction of the Circuit Courts is fixed by the Constitution, and is as follows: "The Circuit Courts shall have such civil and criminal jurisdiction as may be prescribed by law." Constitution of Indiana, Article VII, Section 8.

It is my view that until such time as an indictment or information has been filed, the Marion Superior Court has only such jurisdiction concerning crimes as has been conferred by statute. Once a case is before it, it is enjoined to do justice and has all powers, expressed, implied and inherent, necessary to that end. Inherent power, however, does not encompass a grant of authority to do all that has not been expressly provided for. We may not enlarge our jurisdiction merely by alluding to "inherent power," and to call upon such power to supply a missing gear in the mechanism for detecting and prosecuting criminals, which is not an area of our responsibility, is an abuse of our power and an encroachment upon that of the Legislature.

The majority has quoted from *Babington v. Yellow Taxi Corp.*, (1928) 250 N.Y. 14, 17, 164 N.E. 726, 727 regarding a citizen's duty to assist in law enforcement, but that case, as well as the Early English law therein cited was concerned with arrest and hot pursuit. I agree that a police officer faced with the need for assistance in keeping the peace, effecting an arrest or in retaking an escapee may commandeer my property or services. I do not agree, however, that he can compel my services or take my property as an incident of his surveillance or search for evidence of suspected criminal activity. Neither do I agree that a utility company, by reason of its protected status may have its obligation to serve the public enlarged by judicial order, beyond the requirements of the statutes and regulations under which it is incorporated and franchised.

I would reverse the judgment of the Superior Court and direct that the order in question be vacated.

HUNTER, J., concurs.