201 So.2d 881 (1967)
Donald Felix SCHNEBLE, Appellant,
v.
STATE of Florida, Appellee.
Edward Frank SNELL, Appellant,
v.
State of Florida, Appellee.
Nos. 35092, 35096.
Supreme Court of Florida.
July 27, 1967.
Rehearing Denied September 19, 1967.
*882 Clyde B. Wells, DeFuniak Springs, for appellant Donald Felix Schneble.
Angus G. Andrews, DeFuniak Springs, for appellant Edward Frank Snell.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
CALDWELL, Justice.
Appellants, Edward Frank Snell and Donald Felix Schneble, found guilty of murder in the first degree by a jury, without recommendation of mercy, were, by the Circuit Court of Walton County, adjudged guilty and sentenced to death. Appellants seek review, contending error on five assignments.
The evidence shows the appellants and the victim, Maxine Ramona Collier, left New Orleans in a borrowed automobile and traveled along the Gulf Coast to a point in Walton County, Florida, where Mrs. Collier was killed. The body was placed in the trunk of the automobile and transported thence to Hillsborough County where it was left behind some bushes in a trash dump. Appellants then crossed the State to a destination on the Keys and returned northward to a point in Palm Beach County where they were halted by a patrol officer because of defective lights.
While the appellants were held in Palm Beach County, Snell for driving without a license and Schneble on a vagrancy charge, blood was found in the trunk of the automobile *883 and the officers proceeded to make inquiry, learning, among other things, that a Maxine Collier of New Orleans was missing and that she had left New Orleans with the appellants.
Appellants were questioned by several officers, all of whom, before interrogation, advised them they had the right to an attorney, that they need say nothing prior to seeing an attorney and that anything said could be used against them in a court of law. It appears this advice was reiterated from time to time over the several days during which appellants were questioned.
Defendants' first assignment of error, the Court's refusal to grant the defendants' motion to quash the indictment, is without merit. Venue was properly laid and proven in Walton County. We cannot agree the Court erred in granting the State's motion to consolidate the two cases for trial. The indictments are identical, with the exception of the name of the accused, and the facts alleged and proven are so interwoven as to the persons accused as to warrant the consolidation.
Appellants assign as error the Court's refusal to grant defendants' motions to suppress certain evidence and testimony and the Court's rulings on certain motions and objections. The first question is whether the Court properly admitted two pistols in evidence.
The record discloses that Trooper Maddox stopped the automobile driven by appellant Snell because of defective lights and required both Snell and his passenger, appellant Schneble, to leave the vehicle and be apprised of the deficiency.
Snell did not have a driver's license and his devious explanations put Maddox upon inquiry as to whether the car had been stolen. He then questioned Schneble and required both to sit in his, Maddox' automobile, while he, with Snell's consent, moved the offending vehicle farther off the roadway. In doing so Maddox observed a pistol partially hidden by a raincoat on the front seat. The pistol was loaded and its possession could not reasonably be accounted for by Snell. Maddox then asked Schneble if he had a pistol and, upon being told his pistol was in his bag in the car, asked him to get it out. The trooper, in the exercise of reasonable caution, was authorized to investigate Snell's possession of the pistol found on the front seat of the car and, in view of suspicious circumstance, to take custody of Schneble's pistol. An arresting officer is required to observe any precaution necessary to his own and the public's safety.
Appellants assert error because, over their objection, an analyst of the ballistic section of the laboratory of the Florida Sheriff's Bureau was permitted to testify that the bullet recovered from the body of the victim was fired from the pistol found on the front seat of the vehicle driven by Snell. We find no error in the admission of this testimony. The trooper could see a portion of the pistol lying under the raincoat and no search of the vehicle was necessary to its production.[1]
Appellants contend the corpus delicti was not established by evidence independent of the admissions on the part of the defendant Schneble. While it is true that, before a confession may be received in evidence there must be some independent proof, either direct or circumstantial, of the corpus delicti, it need not be proved beyond a reasonable doubt, it being enough if the evidence tends to show a crime was committed. The question is whether the evidence of corpus delicti is prima facie sufficient to authorize the admission of the *884 confession.[2] The record here discloses, among other pertinent facts, that hair and blood were found in the automobile and that Maxine Collier, the deceased, had left New Orleans with the two defendants and had subsequently disappeared.
Appellants insist the admissions of the defendant Schneble were obtained in a manner calculated to delude as to his true position and to assert improper and undue influence over his mind. The particular circumstances of each case must be considered in determining whether admissions were voluntary expressions of the mind. A confession is not necessarily involuntary and inadmissible merely because it was elicited by inquiries and questions addressed to the accused.[3] We have examined the record of this cause with care and find no evidence of conduct or coercion which could have rendered the admissions of appellant Schneble inadmissible. While it is true the interrogations were prolonged and under unusual conditions, it does not appear the defendant was coerced.
We are in agreement with appellants' statements that, before an admission against defendants' interests may be admitted in evidence, it must be first established the mind of the defendant was at all times free to act, uninfluenced by fear or hope or improper influence. We hold that, when the admissions of these defendants were made, they were free to act, were not subjected to improper influences and did act voluntarily.
Officer Haley's testimony presents a factual recital of the circumstances connected with the several damaging admissions by Schneble made on separate occasions. Haley testified the officers had concluded Schneble and Snell should be confined in separate jails and that Schneble should be moved to the City jail of Lake Worth. On this trip Haley asked Schneble "did he have any idea where his buddy could get his hands on $5,000?" and said, "I understand that is the price that has been put on your head." It appears Schneble was afraid of Snell, whom he believed to have some sort of underworld connections. When they stopped momentarily in a trailer park enroute to Lake Worth, Schneble remarked, "When you find this broad, she is going to have a bullet in her head but I didn't put it there." The officer asked, "Where is she?" and Schneble replied, "Well, I would rather not say. This body will pop up Monday." He told the officer the gun that shot the woman was the gun found on the front seat of the car and it belonged to Snell. He refused further comment and was then placed in the Lake Worth jail. But the officers said, because Schneble did not want to go into the jail that night, they rode out to a Sheriff's Department sub-station and finally returned to the jail about five o'clock on Sunday morning. The officers returned to the jail about 9:30 p.m. Sunday evening and it was at this point they developed the bizarre plan to take Snell on an automobile ride to Belle Glade, some 40 to 50 miles. They arranged to have another officer follow them and gave Schneble the impression that in the car following were some of Snell's "torpedoes" who intended to put him out of business. The officers had the officer in the second car shoot off firecrackers to make Schneble believe they were being fired upon. It is to be noted that during this silly escapade Schneble made no damaging statements.
Finally, the officers concluded their conduct was very foolish. They stopped at the Palm Beach Airport, took Schneble into *885 the lounge for coffee and told him the whole ride was a hoax; that it was something they had cooked up to frighten him, there was nothing to it and was all a trick. Needless to add, the officers stated Schneble seemed to be relieved and then repeated his statement the body would pop up Monday. Thereupon he was returned to the Lake Worth jail between 4:00 and 4:30 Monday morning. Officer Haley left his card and told Schneble to have the jailer call him if he wished to talk.
Haley returned to the Lake Worth jail around 4:30 Monday afternoon and told Schneble "I wanted to let you know the body has not come up yet." Schneble told the officer he had given the thing a lot of thought and "I will take you to her. She is in Hillsborough County." This of course, broke the case and the investigation which followed revealed the decomposed remains of the victim at the location in Hillsborough County pointed out by Schneble.
They then went on to West Florida where Schneble identified the location in Walton County where the woman had been strangled and shot in the head. The record discloses Schneble and Snell robbed the woman of $60.00 and the automobile and then killed her and transported her body from Walton to Hillsborough County in the trunk of the stolen car. The recovery of the body and the search of the site of the crime revealed other damaging evidence.
It seems clear the ride around Palm Beach County, accompanied by the shooting of the firecrackers and other trickery, did not have bearing on the ultimate decision of Schneble to reveal the location of the body of the victim. It was not until after Schneble had been lodged in the Lake Worth jail and some 12 to 14 hours after the officers had explained to him that the ride, the firecrackers and the trickery were all a hoax that he made the admission regarding the location of the body.
The test of admissibility of these admissions is covered by the rule of Escobedo.[4] The instant case was tried November 16, 1965. Escobedo was decided June 22, 1964. Under Johnson[5] the Escobedo rule governs cases decided subsequent to that decision. Similarly, Miranda[6] was held to be prospective in its effect and governs cases tried subsequent to the date of that decision, June 13, 1966. The cause under review is governed by Escobedo, not by Miranda, although it appears these admissions were admissible even under Miranda standards. By that decision, the United States Supreme Court approved and recommended the practice followed by the Federal Bureau of Investigation which, in effect, informs both suspects and persons on arrest they have a right to say nothing, a right to counsel; that, if unable to provide their own, they are entitled to free counsel and that any statement made may be used against them in court.
The record in this cause, in several places, reveals the officers repeatedly advised Schneble in substantially the manner discussed above. Actually, in this case Federal Bureau of Investigation Agent Kellogg interrogated both appellants to determine whether there had been violation of Federal law. Kellogg testified he had fully informed both men of their constitutional right to silence, their right to an attorney and the fact that anything said could be used against them.
Additionally, Officer Haley told Schneble he would explain to the judge and jury that he had been most cooperative and that he could not have "broken the case" without his assistance. He did not promise leniency *886 because he said he could not. The officer fulfilled his promise and did tell the judge and jury of Schneble's cooperation. All of this went into evidence.
The appellants were fully informed of their rights. The damaging admissions made by Schneble were obtained by the officer in a manner which comported with constitutional standards.
We find no merit in appellants' assignments four and five.
We have reviewed the evidence, as obligated under § 924.32(2), Florida Statutes, F.S.A., and have concluded the homicide was premeditated.
No reversible error has been made to appear. The judgment appealed from is affirmed.
O'CONNELL, C.J., and ROBERTS, THORNAL and ERVIN, JJ., concur.
DREW, J., dissents with opinion.
THOMAS, J., dissents and agrees with DREW, J.
DREW, Justice (dissenting).
Accepting the facts delineated in the majority opinion, I find it impossible to agree with the conclusion "[t]he damaging admissions made by Schneble were obtained by the officer in a manner which comported with constitutional standards." My views upon the subject of confessions obtained from persons in the custody of police officers under like circumstances are fully set forth in my dissenting opinion in Dawson v. State, Fla., 139 So.2d 408, text 418-423.
The totality of the circumstances in this case establish a series of events planned and carried out by sworn officers of the law over a period of more than four days admittedly designed to secure a confession from the defendant Schneble. I cannot approve such conduct  and, surely  I cannot from this record say that under such circumstances this confession was freely and voluntarily made.
I, therefore, dissent.
THOMAS, J., concurs.
NOTES
[1] Self v. State, 98 So.2d 333 (Fla. 1957); Brown v. State, 91 So.2d 175 (Fla. 1956); State v. Simmons, 85 So.2d 879 (Fla. 1956); Longo v. State, 157 Fla. 668, 26 So.2d 818 (1946).
[2] Frazier v. State, 107 So.2d 16 (Fla. 1958); McElveen v. State, 72 So.2d 785 (Fla. 1954); Graham v. State, 153 Fla. 807, 16 So.2d 59 (1943); Keir v. State, 152 Fla. 389, 11 So.2d 886 (1943); Nickels v. State, 90 Fla. 659, 106 So. 479 (1925); Parrish v. State, 90 Fla. 25, 105 So. 130 (1925); Tucker v. State, 64 Fla. 518, 59 So. 941 (1912); See Annotation: 45 A.L.R.2d 1316 (1954).
[3] Frazier v. State, 107 So.2d 16, 26 (Fla. 1958); 20 Am.Jur., Evidence, § 496-7, 500.
[4] Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).
[5] Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).
[6] Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).