MAYOR AND CITY COUNCIL OF BALTIMORE
*v.* UNITED FIVE AND TEN CENT
STORES, INC.

[No. 249, September Term, 1967.]

*Decided June 28, 1968.*

The cause was argued before HAMMOND, C. J. and MARBURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Roger C. Duncan, Assistant City Solicitor,* with whom were *Joseph Allen, City Solicitor,* and *James L. Bundy, Assistant City Solicitor,* on the brief, for appellant.

*Leroy W. Preston,* with whom were *O'Connor & Preston, John Wheeler Glenn* and *Joseph R. Hirschmann* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore condemned property of appellee in the "Madison Park North" Urban Renewal area. This area was part of the overall Mount Royal-Fremont Renewal Area encompassing a total of 925 acres approved by the Mayor and City Council of Baltimore as a "renewal" area by Ordinance No. 875 on May 22, 1957.

The court below instructed the jury that it should add to the current fair market value of the property the amount of any diminution in value occurring subsequent to May 22, 1957, the

date of the adoption of Ordinance 875 which designated the area as one for renewal. Specifically, the court instructed as follows:

> "I instruct you that the Ordinance of the Mayor and City Council dated April 16, 1963, known as Ordinance No. 1594 was the legislative authority by which the City of Baltimore was allowed to acquire this piece of property. I instruct you further that Ordinance No. 875 passed on May 22, 1957 described the overall area, including 925 acres, as an Urban Renewal Area and was an announcement by the Mayor and City Council approving the actions of the Planning Commission of Baltimore in designating the overall Mount Royal-Fremont Renewal Area within which this property was located.
>
> "If you find from the evidence that there was a diminution of value occurring subsequent to the enactment of *either* Ordinance 875 or Ordinance 1594, or that there was a diminution of value by any acts of a public nature or any announcement made by the Mayor and City Council or its officials, or by the Urban Renewal, or any of its officials, and that these enactments or these announcements or acts proximately caused any diminution of value to the subject property then you must consider such diminution of value under the instructions given you and add that amount to any amount which you find to be a fair market value as of today if you find that the fair market value today has been diminished in that interval and was caused by either of the legislative enactments or any announcement or any acts by the public officials in connection with the project." (Emphasis supplied.)

The above instruction was based upon the court's interpretation of the statutory definition of "fair market value" found in Article 33A, § 6, of the Annotated Code of Maryland (1967 Repl. Vol.), which reads in pertinent part:

> "The fair market value of property in a proceeding for condemnation shall be the price as of the valuation

date . . . plus the amount, if any, by which such price reflects a diminution in value occurring between the effective date of legislative authority for the acquisition of such property and the date of actual taking if the trier of facts shall find that such diminution in value was proximately caused by the public project for which the property condemned is needed, or by announcements or acts of the plaintiff or its officials concerning such public project * * *."

The city took exception to the portion quoted above because it allowed the jury to take into account diminution in value occurring prior to April 16, 1963, the effective date of Ordinance No. 1594, the legislative authority for the city's acquisition of the subject property. The exception was denied. A motion for a new trial was also denied.

The problem here arises as to the proper construction of § 6 of Article 33A. In effect, the city requests that the statute be construed to read:

"The fair market value of property in a proceeding for condemnation shall be the price as of the valuation date * * * plus the amount, if any, by which such price reflects a diminution in value occurring between the effective date of legislative authority for the acquisition of such property and the date of actual taking if the trier of facts shall find that such diminution in value was proximately caused by:

A. The public project, or

B. Announcements of plaintiff or its officials concerning such public project, or

C. By acts of plaintiff or its officials concerning such public project."

The purpose of the enactment here is made clear by its legislative history. The Legislative Council recognized that public acts or announcements by the condemnor may have a significant influence on the property concerned. Such acts or announcements might cause property to be vacated or vandalized with a resultant depreciation in value. There may be, as there was here, a lapse of years between the initial project announcement

and enactment of specific authority for the taking. It is here conceded that the actual diminution of value occurred in this interim period.

The Legislative Council Committee "To Revise the Condemnation Laws of Maryland" recognized the above inequity. To protect the property owner in this situation, it recommended in its report that there be compensation for diminution in value. Senate Bill No. 8 was introduced in 1963 in which § 6 read as follows:

> "The fair market value of property in a proceeding for condemnation shall be the price as of the valuation date for the highest and best use of such property which a seller, willing but not obligated to sell, would accept for the property, and which a buyer, willing but not obligated to buy, would pay therefor excluding any increment in value proximately caused by the public project for which the property condemned is needed, *plus the amount, if any, by which such price reflects a diminution in value proximately caused by the public project for which the property condemned is needed, or by announcements or acts of the plaintiff or its officials concerning such public project.*" (Emphasis supplied.)

While Senate Bill No. 8 was in committee, the Mayor and City Council of Baltimore suggested that § 6 be amended by the insertion of the italicized language set forth below:

> "The fair market value of property in a proceeding for condemnation shall be the price as of the valuation date for the highest and best use of such property which a seller, willing but not obligated to sell, would accept for the property, and which a buyer, willing but not obligated to buy, would pay therefor excluding any increment in value proximately caused by the public project for which the property condemned is needed, plus the amount, if any, by which such price reflects a diminution in value *occurring between the effective date of legislative authority for the acquisition of such property and the date of actual taking if*

*the trier of facts shall find that such diminution in value was* proximately caused by the public project for which the property condemned is needed, or by announcements or acts of the plaintiff or its officials concerning such public project, and *was beyond the reasonable control* òf the property owner.

"If the condemnor is vested with a continuing power of condemnation, the phrase 'the effective date of legislative authority for the acquisition of such property,' as used in this section, shall mean 'the date of specific administrative determination to acquire such property.' "

As finally enacted, the statute reads as hereinbefore set forth.

The interpretation given by the lower court gives the most general remedy, *Rogan v. B. & O. R. R. Company,* 188 Md. 44, 53, 52 A. 2d 261, 266 (1947), and most effectually carries out the legislative purpose. *Liquor Dealers v. Comptroller,* 241 Md. 656, 660, 217 A. 2d 571, 574 (1966).

The case of *Webb v. City of Baltimore,* 179 Md. 407, 19 A. 2d 704 (1941), is very similar to this case. There we had before us the construction of Art. 43, § 63, of the 1939 Code. The statute read as follows:

"Any expenses incurred by the authorities of any city, town or county in maintaining in a hospital, or in a temporary place for the reception of the sick, a patient who is not a pauper shall be deemed to be a debt due from such patient to the authorities aforesaid, and may be recovered from him at any time within twelve months after the discharge from such hospital or place of reception, or from his estate, in the event of his dying in such hospital."

The question before the Court on appeal was: Does the limitation of twelve months imposed by the statute apply as a special limitation against an estate in the event of a patient dying within the institution? The Court, in its opinion, said (179 Md. 409):

"The Statute provides in part 'a debt due from such patient ·to the authorities aforesaid * * * may be re-

covered' in two situations, (1) 'from him at any time within twelve months after the discharge from such hospital or place of reception,' or (2) 'from his estate, in the event of his dying in such hospital.' Had the Legislature intended to limit the collection of the claim against the estate of the insane patient to twelve months after his death, it is reasonable to assume that the twelve months' limitation would have been *repeated* in the latter provision, as they are distinct situations. Judge Parke said in *Continental Oil Co. v. Horsey,* 175 Md. 609, at pages 612 and 613, 3 A. 2d 476, at page 478, in construing a contract of guaranty, with three classes of shortage, all contained within the same sentence, and separated by commas, 'Every one of these three classes is distinguished by a particular feature and so is not identical, but distinct and separate and so intended by the parties to be kept and enforced. In order to make the final words of the last clause of the sentence that created the third class, apply to the two antecedent classes it would be necessary *to wrest these words from their context;* to abandon a common sense reading of the contract, and also, to violate the rule of construction that in a successive creation of classes by definition the distinctive description of the last class is not generally effective beyond its last antecedent.' It appears also that subsequent clauses should not be limited by independent precedent clauses unless the intention be clearly expressed. Quoting 59 *Corpus Juris,* page 990, 'Punctuation may, when the meaning of the statute is uncertain, be looked to in ascertaining the real meaning, or, if the punctuation gives the statute a reasonable meaning apparently in accord with the legislative intent, it may be used as an additional argument for adopting the literal meaning of the words of the statute thus punctuated.' *Redmond v. State,* 155 Md. 13, at page 18, 141 A. 383. As stated by the judge below, in his opinion filed as a memorandum in the record, if a prolonged contest should develop over the will of a deceased patient or over the right to ad-

minister, whereby there would be no proper defendant against whom a suit could be maintained, or if such patient should die supposedly without assets and the existence of an estate be discovered subsequent to twelve months after his death, if the twelve months' limitation applied, recovery would not be possible. It is not reasonable to assume that the Legislature had any such intention." (Emphasis supplied.)

All parts of a statute must have been intended to have meaning, *St. Joseph Hospital v. Quinn*, 241 Md. 371, 379, 216 A. 2d 732, 736 (1966), and must be so interpreted. *Rafferty v. Comptroller*, 228 Md. 153, 158, 178 A. 2d 896, 898 (1962). Before language in a statute may be rejected as surplusage it must be certain that the legislature could not possibly have intended the words to be in the statute. *Pressman v. State Tax Commission*, 204 Md. 78, 90, 102 A. 2d 821, 828 (1954).

In *Welsh v. Kuntz*, 196 Md. 86, 98, 75 A. 2d 343, 348 (1950), this Court said:

"* * * It is a natural presumption that the Legislature does not intend to use words in vain or to leave a part of its enactment without sense or meaning, but intends that every part of it shall be operative. Hence, the Court endeavors to avoid that construction of a statute which, in giving effect to one part of it, will *bian National Life Ins. Co.*, 141 Wis. 557, 124 N. W. make another part superfluous and useless. *People v. Sholem*, 238 Ill. 203, 87 N. E. 390; *State v. Colum-*
In *Thomas v. Police Commissioner*, 211 Md. 357, 361, 127 502, 505."

A. 2d 625, 627 (1956), this Court said:

"It is a hornbook rule of statutory construction that, in ascertaining the intention of the Legislature, all parts of a statute are to be read together to find the intention as to any one part and that all parts are to be reconciled and harmonized if possible. *Bickel v. Nice*, 173 Md. 1, 6; *Baltimore v. Deegan*, 163 Md. 234, 238; *Pittman v. Housing Authority*, 180 Md. 457, 463;

> *Maguire v. State,* 192 Md. 615, 623; *Frazier v. War-field,* 13 Md. 279, 301. A corollary rule of construction is that if there is no clear indication to the contrary and it is reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless or nugatory. * * *"

To adopt the construction urged by the city would render nugatory the phrase "by announcements or acts of the plaintiff or its officials concerning such public project," since any such announcements or acts made subsequent to the effective date of legislative authority for acquisition would be the same as the diminution in value caused by the project itself.

Judge O'Donnell aptly put the situation when he stated that to construe this statute as the city would have it construed would permit the Mayor or some other authoritative city official to go on television and say, "I am today sending to the City Council an Ordinance to make all of Roland Park a Redevelopment Area," with no enactment of the condemnation ordinance actually permitting the acquisition of the properties until a year later. The promulgation of such an announcement might proximately cause a diminution in value of property in Roland Park in a condemnation proceeding, yet there would be no compensation to the property owner for such diminution.

Accordingly, it is our conclusion that the statute must have a meaning other than that accorded to it by the City of Baltimore. We believe the proper interpretation is that stated by Judge O'Donnell in his opinion:

> "It is the Court's conclusion that it was the clear and expressed intention of the Legislature in connection with the definition of 'fair market value,' as set forth in Art. 33A, Sec. 6, to provide that the value, on the date of trial (the taking date) should have added to it, if there has been a diminution in value, the amount, if any, by which such price reflects a diminution in value: (1) occurring between the effective date of the legislative authority for the acquisition of such property and the date of the actual taking (if the trier of facts

shall find that such diminution in value was proximately caused by the public project for which the property condemned is needed), or (2) was proximately caused by announcements or acts of the plaintiff or its officials concerning such public project."

*Judgment affirmed; costs to be paid by appellant.*