## SHERMAN *v.* AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA

[No. 146, September Term, 1971.]

*Decided January 18, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Samuel Blibaum,* with whom were *Gerald N. Klauber* and *Fine & Klauber* on the brief, for appellant.

Submitted on brief by *Robert E. McManus* for appellee.

DIGGES, J., delivered the opinion of the Court.

This appeal is before us from the Baltimore City Court where Judge Howard granted a summary judgment in favor of the appellee, American Bankers Life Assurance Company of Florida. The appellant, William Lawrence Sherman, entered into a contractual relationship with Bankers Life whereby he became the company's "Regional Marketing Director" in the Washington-Baltimore area. No specific definition of this job was supplied in the contract but apparently a regional marketing director's activities included not only selling insurance on his own but also employing others to solicit this type of business. In other words he was supposed to set

up a branch office in a designated region and coordinate its activities for the parent company. The agreement was set out in two separate writings each of which specifically made mention of the other. The first paper was the Bankers Life standard form contract which was dated 1 August 1966 but was not signed by the parties until a number of days later, on August 17. The second was a "supplemental letter" dated 17 August 1966, which was attached to the other document. It was hoped that this association would prove to be one of great longevity but such was not the case for only twelve weeks after its initiation Sherman ended the relationship, on November 8, 1966. As a result of this action Bankers Life demanded from appellant the return of $3,082.75 the company had advanced him and which by the terms of the contract was to be repaid immediately upon its termination. When this entreaty was ignored appellee docketed suit and included a motion for summary judgment supported by an affidavit, with the contract attached, alleging the facts just related. When Sherman's demurrer was overruled he responded with a general issue plea and in addition filed an answer accompanied by an affidavit opposing the summary judgment motion. Despite this resistence Judge Howard granted the motion on the ground that Sherman's "[a]ffidavit presents insufficient facts to permit him to dispute the existence or validity of the written contract of August, 1966." From that ruling this appeal results, but to no avail for appellant, as we agree with the trial court's decision.

Just recently in *Brown v. Suburban Cadillac, Inc.*, 260 Md. 251, 254-55, 272 A. 2d 42 (1971) we generally discussed summary judgment procedure under Maryland Rule 610. There Judge Finan, in speaking for the Court, succinctly said:

> "The purpose of a hearing on a motion for summary judgment at the trial level is not to try the case on its merits, but rather to decide whether any real dispute as to material facts

exists. If the pleadings, depositions, admissions, and affidavits (if any) show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law, then summary judgment should be granted. Maryland Rule 610 d 1. Conversely, if there is a genuine dispute as to any material fact, summary judgment would not properly be granted.

An appellate court, in reviewing a motion for summary judgment, should be concerned primarily with deciding whether or not a factual issue exists, and in this regard, all inferences should be resolved against the party making the motion. Be that as it may, when the moving party has set forth sufficient grounds for summary judgment, the party opposing the motion must *show with some precision that there is a genuine dispute as to a material fact.* And, the opposing party must make such a showing by facts which would be admissible in evidence. Maryland Rule 610 b." (All case citations omitted and emphasis added.)

In the case before us the only factual allegations in the record opposing summary judgment are contained in Sherman's affidavit where he said that the insurance company verbally agreed that they would assist in the following manner:

1. Aid in establishing an office,
2. Supply necessary forms,
3. Supply business cards,
4. Supply necessary manpower,
5. Supply "various and sundry other items",
6. Exonerate the repayment obligation of any monies advanced.

Appellant nowhere disputes either the existence of the written contract or his receipt of the $3,082.75 advanced

by the company. Instead, he says that the sole reason he terminated this relationship was because Bankers Life failed to abide by these enumerated stipulations and therefore he was prevented from carrying out the agreement.

It is important to initially note that there is nothing in the written contract including the letter which even suggests that these listed oral conditions, with the possible exception of item 2, were agreed upon. Assuming *arguendo* that these conversations can modify the contract, we must examine the purported verbal agreement but our review of the record only uncovers ambiguous statements which are too uncertain to create a factual dispute. *Tri-State v. Middleman,* 238 Md. 41, 47, 207 A. 2d 499 (1965). What we have here is not only an affidavit which generally sets forth vague claims, but these very claims, individually, are indefinite and equivocal. For Sherman to even hope to prevail he must specify that the oral communications upon which he relies occurred subsequent to August 17, 1966, because both the standard form instrument and the supplementary letter of August 17 specifically merge all agreements prior to that date into the written contract. The letter states: "I [Sherman] agree that this letter and Regional Marketing Director's Contract dated August 1, 1966 sets forth the full terms of my agreement with the Company." However, appellant, in responding to interrogatories seeking information about the date on which these verbal modifications occurred, twice was completely indefinite. Following exceptions, on the third go-round, still vacillating, he said: "The Defendant *believes* that the dates of the oral agreements were made *sometime in July or August* of 1966." (Emphasis added.) This leaves us with a mere possibility that the clarifications and new provisions allegedly adopted were subsequent to August 17. That is simply unsupported conjecture. In fact based on appellant's suggested 62-day interval ("July or August"), it is mathematically more probable that these agreements occurred in the 47 days prior to August 17

than it is that they took place in the 14 days following. In order to prevail appellant must be more explicit as to the dates involved before he can preclude the granting of summary judgment; all we are given here is a mere guess. *Kirsner v. Fleischmann*, 261 Md. 164, 171, 274 A 2d 339 (1971) ; *Tri-State v. Middleman, supra.*

Likewise, this same conclusion is applicable to Sherman's argument that he was not obligated to repay the $3,082.75 that was advanced to him by the insurance company. The allegation that he was exonerated from this debt is totally equivocal as to when it occurred in relation to August 17, 1966. And here any possible oral covenant is contrary to an express provision in the contract which relates in Section 5:

> "I. Any sum that may be advanced or loaned to RMD [Regional Marketing Director] by the Company by reason of the provisions hereof, or otherwise, shall be a debt of RMD to the Company, due and payable upon demand, . . .
>
> . . .
>
> It is further understood and agreed that the termination of this contract, shall ipso facto mature and constitute a demand for the immediate payment of any and all indebtedness due and owing by said RMD to the Company."

This claim by appellant is no sounder than its immediate predecessor, just discussed, and is similarly rejected.

One final point which needs attention is the issue of Bankers Life supplying "the necessary forms" (Item 2). There is a provision in the written contract which stipulates: "RMD shall . . . keep all accounts and records on proper forms furnished by the Company." Appellant does not specify that the forms referred to in his affidavit are the same ones as those contemplated by this requirement. But even assuming they are, Sherman does not relate any facts demonstrating that their absence was so significant as to prevent the carrying out of the compact. Apparently these forms were not pri-

marily for appellant's benefit but instead were intended to facilitate for the company the maintenance of its bookkeeping records. Therefore, while this possibly can be said to create a factual question, it certainly is not material enough to prohibit the summary judgment. As we said in *Parklawn v. Nee,* 243 Md. 249, 254, 220 A. 2d 563 (1966) :

> "Assuming that there was such a factual question raised, it was not, standing alone, a material one. In order to prevent the granting of a motion for summary judgment the objecting party must show more than that there was a question of fact presented, he must, of course, also show that the resolution of that question will somehow affect the outcome of the case, *i.e.,* that it is a material fact."

*Kirsner v. Fleischmann, supra* at 172-73 ; *Meola v. Bethlehem Steel,* 246 Md. 226, 239-40, 228 A. 2d 254 (1967). Appellant here has not exhibited that the question of his failure to receive the forms, even if resolved in his favor, can affect the outcome of this case. We affirm the trial court's ruling.

*Judgment affirmed. Costs to be paid by appellant.*